Strafford
No. 6992

## University of New Hampshire

v.

## Wayne April and UNH Gay Students Organization

October 31, 1975

*Devine, Millimet, Stahl & Branch* and *Silas Little III (Mr. Joseph A. Millimet* orally) for the plaintiff.

*New Hampshire Civil Liberties Union, Inc. (Mr. Richard S. Kohn),* by brief and orally, for the defendants.

*James J. Clancy* (of California) as amicus curiae, filed a memorandum.

DUNCAN, J.   On November 21, 1973, plaintiff University of New Hampshire (UNH) commenced this action in the superior court, seeking declaratory relief (RSA 491:22) against the UNH Gay Students Organization (GSO), a recognized campus association of homosexuals, and its president Wayne April. Fearing "substantial adverse publicity" and "a serious loss of support among certain elected officials" because of proposed GSO social functions, the university sought a declaration of its authority to revoke official recognition of the GSO and to limit GSO activities to nonsocial lectures and discussions.

On November 29, 1973, the GSO filed a petition for declaratory and injunctive relief in the United States District Court, complaining of denial of its civil rights by the university in the denial of permission for a social function and in other respects, and seeking an adjudication and declaration of its rights to organize and function on the university campus. UNH did not object to the district court's assuming jurisdiction and both sides urged a full resolution of the constitutional aspects of the university's power to regulate the GSO. After extensive evidentiary hearings, the District Court *(Bownes,* J.) on January 16, 1974, entered judgment defining the rights of the GSO and permanently enjoining the university from differential treatment of the GSO. *Gay Students Org. v. Bonner,* 367 F. Supp. 1088 (D.N.H. 1974), *aff'd,* 509 F.2d 652 (1st Cir. 1974).

On February 13, 1974, the GSO filed a motion to dismiss the state court action. On February 27, 1974, pending its appeal to the United States Court of Appeals for the First Circuit, UNH moved to amend its original superior court petition. The amended petition sought to determine whether the university could permissibly regulate the GSO's activities if homosexuality were found to be an illness or mental disorder. Although both parties were aware of the mental disorder issue in the federal action, neither raised it and it was not specifically adjudicated. On March 7, 1974, the GSO moved the state court to dismiss the amended petition on grounds of res judicata and collateral estoppel. On April 8, 1974, that motion was denied. The Court *(Flynn,* J.) ruled that while the declaratory judgment operates to merge and bar relitigation of matters that were actually adjudicated therein, it did not preclude subsequent litigation of the issue of mental disorder that could have been presented in the federal action but was not. The exceptions of

the defendants to the court's ruling were reserved and transferred. So far as the action before us is affected, the judgment of the district court was affirmed on December 30, 1974, by the United States Court of Appeals for the First Circuit. 509 F.2d 652 (1st Cir. 1974).

Both the United States District Court and the Strafford County Superior Court had in personam jurisdiction over the parties, and neither party objected to the federal court proceeding concurrently with the state court action. *See* 1A J. Moore, Federal Practice (pt. 2) para. 0.221 (2d ed. 1974); *Sosna v. Iowa,* 419 U.S. 393, 396 n.3 (1975). Either court was thus free to try the action independently of the other; and when a judgment is rendered in one court and pleaded in the other, "the effect of that judgment is to be determined by the application of the principles of *res judicata* by the court in which the action is still pending . . . ." *Kline v. Burke Constr. Co.,* 260 U.S. 226, 230 (1922); *PPG Industries, Inc. v. Continental Oil Co.,* 478 F.2d 674, 677 (5th Cir. 1973); *see Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Engineers,* 398 U.S. 281, 295-96 (1970).

The narrow issue presented by the transferred case is whether, under the principles of res judicata developed in this State, the matters declared by the federal courts operate to preclude adjudication of the rights of the parties, if homosexuality should be found to be a mental disorder or illness. The underlying rationale for the general rule that a prior judgment for a defendant bars a subsequent action on the same claim is that "fairness to the defendant, and sound judicial administration, require that at some point litigation over the particular controversy come to an end." *Colebrook Water Co. v. Commissioner of Dep't of Pub. Works,* 114 N.H. 392, 395, 324 A.2d 713, 716 (1974); Restatement (Second) of Judgments § 48, Comment *a* (Tent. Draft No. 1, 1973). Moreover, it has been generally held that a judgment on the merits concludes the parties both as to what was actually litigated and as to everything that might have been litigated. *Lougee v. Beres,* 113 N.H. 712, 714, 313 A.2d 422, 423 (1973); *Ainsworth v. Claremont,* 108 N.H. 55, 226 A.2d 867 (1967); Restatement of Judgments § 65 (1) (1942); Restatement (Second) of Judgments § 61 (Tent. Draft No. 1, 1973).

Unlike plaintiff's original complaint filed in superior court, the amended complaint does not seek to fully revoke recognition of the GSO. Rather, the university alleges that if homosexuality is found to be an illness then on that basis it may properly limit the activities of the GSO to lectures and discussions, consistent with free speech protection of the first amendment, while proscribing "social events

such as dancing and parties involving physical contact between members of the same sex". By rephrasing its complaint, UNH seeks to prevent the GSO from sponsoring so-called "social functions", conducted publicly. However, by its own terms, the complaint professes not to seek authority to regulate any of the GSO's "exercises of free speech". The United States District Court placed its emphasis on the GSO's rights of free association and equal protection rather than its right to free expression through social functions. Thus at the time when the amended complaint was filed in the State court the question of whether GSO social functions could be considered "free speech" had not been squarely resolved. *Gay Students Org. v. Bonner,* 367 F. Supp. 1088, 1094-95, 1101-02 (D.N.H. 1974); *see* Note, 26 Maine L. Rev. 397, 414 (1974). On the basis of the declaratory judgment before it, the superior court ruled that res judicata would not preclude action on the narrow issue of whether the characterization of homosexuality as a mental disorder could permit the university "to limit the activities, but not the speech, of the GSO".

On appeal of the district court decision to the United States Court of Appeals, however, the appellate court addressed itself directly to the issue of the defendant organization's free speech rights. It held that although GSO social functions could not be deemed "pure speech", they at least contained sufficient communicative content to bring them within the ambit of the first amendment's protection. *Gay Students Org. v. Bonner,* 509 F.2d 652, 660-62 (1st Cir. 1974). The court further held that the governmental interest alleged was not important enough to justify the university's curtailment or impairment of that "expression". *Id.* at 662; *see United States v. O'Brien,* 391 U.S. 367, 376-77 (1968); *Papish v. Board of Curators,* 410 U.S. 667, 670 (1973). This declaration that GSO social functions do indeed constitute protected speech precludes further action on the limited issue presented to the superior court. An adjudication of whether homosexuality is a mental disorder is thus precluded, for even if it were so found, the university by its amended complaint professes no purpose to regulate activities falling within the protection afforded to free speech.

While the res judicata effect of a declaratory judgment as to matters which could have been litigated but were not has been held more restrictive than that of a full judgment on the merits, the basis for such differential treatment is lacking in the present action, where coercive relief was sought and granted in the prior one. Courts have refused to apply a bar, or merger in the judgment, in

cases where coercive relief is first sought in actions brought after a simple declaration of a party's legal status with another; or where anticipatory relief is sought before accrual of a full claim for ordinary relief. Restatement (Second) of Judgments § 76, Comment *c,* (Tent. Draft No. 1, 1973). "However, if the claim has already accrued, refusal of bar or merger effects appears objectionable because it leaves the door open to splitting the claim. Without risk of losing his claim the plaintiff can vexatiously try out various grounds for recovery . . . [or] a potential defendant can experiment with various defenses by means of successive declaratory actions to establish nonliability, without the risk of later being precluded." Restatement (Second) of Judgments § 76, Comment *c* at 222 (Tent. Draft No. 1, 1973); *see Howe v. Nelson,* 271 Minn. 296, 301-02, 135 N.W.2d 687, 692 (1965).

The cases relied upon by the superior court in the main sought by subsequent proceedings to enforce rights previously determined in the declaratory judgment action. *Cooke v. Gaidry,* 309 Ky. 727, 218 S.W.2d 960 (1949); *Valley Oil Co. v. Garland,* 499 S.W.2d 333 (Tex. App. 1973); *cf. Atchison v. Englewood,* 180 Colo. 407, 506 P.2d 140 (1973). Generally, declaratory judgments have not precluded successful litigants from seeking further coercive relief consistent with those rights. *See* 28 U.S.C.A. § 2202 and cases cited.

The present action by UNH in the superior court does not seek further relief in vindication of rights previously established, but rather seeks to relitigate the rights of the adversaries vis-a-vis each other. *PI Enterprises, Inc. v. Cataldo,* 457 F.2d 1012 (1st Cir. 1972). The thesis that a declaratory judgment is final only as to issues actually litigated is inapplicable under these circumstances. 2 W.H. Anderson, Actions for Declaratory Judgments § 459, at 1079-81 (1951). *See also Faulkner v. City of Keene,* 85 N.H. 147, 151, 155 A. 195, 198 (1931). Where only declaratory relief is sought in the first suit, and coercive relief is sought in the second, there may be reason to limit the application of res judicata to those issues actually litigated in the first suit. There is no reason to so limit it here.

The issue of whether or not homosexuality is a mental disorder justifying greater university supervision over the GSO's social activities could have been interposed as a defense to the action in the federal court. A valid judgment finally negatives every defense that was or might have been raised. This is so in spite of the fact that the defense is actually raised by way of an affirmative claim for relief in the form of a different cause of action in a subsequent proceeding.

46 Am. Jur. 2d *Judgments* § 431, at 601-02; *McGrath v. McGrath,* 109 N.H. 312, 251 A.2d 336 (1969).

Since in the present action coercive relief was sought and obtained in the federal suit, and the claim clearly had accrued in full, the same res judicata effect applies to the declaratory judgment as would be applied to an ordinary judgment.

Since the declaratory judgment entered by the United States District Court has been affirmed by the United States Court of Appeals upon first amendment grounds as well as those relied upon by the district court, that judgment is conclusive between the parties, and the university is precluded from proceeding with its amended complaint. Restatement of Judgments § 77 (1942); Restatement (Second) of Judgments § 76 (Tent. Draft No. 1, 1973); *Washington Tp. v. Gould,* 39 N.J. 527, 189 A.2d 697 (1963); Annot., 10 A.L.R.2d 782, 787 (1950).

*Defendants' exceptions sustained.*

All concurred.